THE PEOPLE *ex rel.* BEVERLY SPICER, Plaintiff-Appellee, *v.* ALBERT COLEMAN, Defendant-Appellant.

First District (5th Division)    No. 78-1118

Opinion filed May 18, 1979.

Leonard Karlin, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Joann DiStefano, Assistant State's Attorneys, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendant appeals from a supplemental order for increased support payments entered in a paternity proceeding. The issues presented are (1) whether defendant's motion to strike and dismiss plaintiff's petition was improperly denied; (2) whether the trial court "erred in forcing the defendant to trial while interrogatories had not been answered"; and (3) whether the trial court erred in taking judicial notice of the insufficiency of the payments originally ordered.

This paternity action originally was brought against defendant in July of 1972 on complaint of Beverly Spicer, who alleged that he was the father of her daughter, Tiffany, born on November 10, 1970. When defendant admitted paternity, an order to that effect was entered and, by a later petition, he was ordered to pay support for Tiffany in the amount of $25 every two weeks. Subsequently, on plaintiff's petition, that amount was ordered increased to $30. A third petition for increase was filed and apparently denied. Then, on April 10, 1978, plaintiff filed the instant petition, alleging that the "expenses for the support, maintenance, education and welfare of the child have increased significantly" since the date of the last support order and that defendant "is financially able to assume part of the increased expenses for his child." The petition requested that support payments be increased to $50 every two weeks. Defendant moved to strike and dismiss the petition, and in the hearing on the motion he argued, among other things, that it should have been brought under the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 et seq.) (hereinafter cited as the Marriage

Act); that it was defective in that it was not verified; and that it was deficient in that it did not allege facts showing a change in circumstances among the parties. On April 10, 1978,[1] an order was entered denying the motion, granting defendant 15 days within which to file an answer to the petition, and continuing the case to April 27, 1978. On April 14, 1978, defendant filed a document entitled "Demand for information pursuant to Rule 201 et seq. Ill. Sup. Ct.," wherein he requested answers to "Interrogatories pursuant to the Rules of Supreme Court of Illinois 201 et seq." The demand consisted of only three questions, seeking information as to "the costs of maintaining Tiffany Spicer" "in January 1975," "as of August 20, 1976," and "as of April 12, 1978."

When the case was called on April 27, 1978, plaintiff tendered a response to the demand for information. Defendant, who had not filed an answer to plaintiff's petition although the 15 days he had been given to do so had transpired, moved for a continuance, arguing that he could not answer the petition or proceed to trial until he had time to study plaintiff's response to the demand for information. The trial court denied the motion and held the hearing on the petition that same day.

Plaintiff's first witness was Beverly Spicer, who testified that Tiffany has lived with her since birth and has been clothed and fed by her at all times; that when the last support order was entered in 1975, Tiffany was four years old and, at that time, attended a nursery school at a cost of $35 every two weeks; that she (Beverly) was then employed at the South Suburban Post Office, earning $210 every two weeks; that the post office moved to a new location in May of 1975 and, although she was offered a position at the new facility, she did not accept it because she had no means of transportation; that she subsequently did baby-sitting for $75 per week until January of 1976, when she secured a job at Bally Manufacturing Company; that her take-home pay at Bally was approximately $150 per week; that she was discharged in May of 1976 because of excessive absences precipitated by the accompaniment of her older son on court appearances in an unrelated matter; that in November of 1976 she became a part-time employee with the Chicago Police Department—earning $100 to $110 every two weeks; that from February to August of 1977 she simultaneously received unemployment compensation in the amount of $50 per week; that she lost her job with the police department in November of 1977—again for excessive absences; that during the Christmas season of 1977 she worked at the post office and earned $368; that she has held no other jobs since that time; and that she currently receives $30 every two weeks from defendant, pursuant to the 1975 support order. On cross-examination, she testified that she no longer

---

[1] The petition and the motion to strike and dismiss were filed on April 10, 1978, with the hearing held and the order entered on that same day.

does baby-sitting because of "bad nerves"; that she is taking medication for hypertension; and that Tiffany currently attends Overton Elementary public school. On redirect examination, she stated that she had been notified by Overton school that Tiffany had high test scores, making her eligible for enrollment in an academic center.

Defendant, called under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60), testified that he has been employed at the Main Post Office for 23 years; that in 1975 his take-home pay was "around two hundred and something" every two weeks; and that his current take-home pay is about $416 or $421 every two weeks.

From the record presented, it appears that defendant called no other witnesses, and the trial court then entered an order increasing the support payments from $30 to $50 every two weeks. This appeal is from that order.

OPINION

Defendant initially contends that the trial court erred in denying his motion to strike and dismiss plaintiff's petition. In support of this position, he argues that the petition, which was brought pursuant to section 9 of the Paternity Act (Ill. Rev. Stat. 1977, ch. 40, par. 1359), should properly have been brought under the Marriage Act. He cites *Cessna v. Montgomery* (1976), 63 Ill. 2d 71, 344 N.E.2d 447, as his sole support for this position, and he urges that the logical extension of the court's holding in *Cessna* is that once paternity is proved, illegitimates must be treated in the same manner as legitimates, and that therefore increases in support payments for illegitimates must be sought under the Marriage Act by the same procedures applying to legitimates.

■■ We fail to see, however, that *Cessna* lends even the slightest support to defendant's argument. The main holding in *Cessna* was that the two-year statute of limitations on paternity actions was not unreasonable and did not violate substantive due process. No aspect of the decision appears applicable to the case at bar, with the possible exception of dicta wherein the court observed "[t]he Paternity Act * * * provides for the illegitimate support rights equal to those of the legitimate—once paternity is established" (63 Ill. 2d 71, 81, 344 N.E.2d 447, 451), and it appears to us that this comment was intended only to quell concerns that any party in that case was somehow afforded unequal treatment.

■■ Furthermore, it is our belief that the application of the Paternity Act in this case cannot be viewed as improper on the three other grounds urged by defendant. We reject his suggestion that he was prejudiced in some manner because the petition, if brought under the Marriage Act, would have been heard in the Domestic Relations Division of the Circuit Court where, he argues, the judges have greater expertise in support

matters. We note, however, that the trial judge in the instant case, as a judge of the circuit court, had jurisdiction to hear the matter and defendant has pointed to nothing in the record, nor have we found anything, to indicate that the trial judge here was not, at the least, of comparable expertise. Neither do we see any merit in defendant's second ground, that the petition should have been dismissed because it was not verified. We have not been referred to any and there appears to be no provision in the Paternity Act requiring such verification.

■■ Furthermore, we see no merit in the third ground raised by defendant; namely, that the petition was deficient because it failed to allege facts of a change of circumstances in the parties. Section 45(2) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 45(2)) requires that a motion to dismiss or to strike a pleading must point out specifically wherein the pleading is insufficient (*Lee v. Conroy* (1973), 13 Ill. App. 3d 694, 300 N.E.2d 505), so as to provide the opposing party an opportunity to cure the specified objection by amendment (*Central Illinois Electric & Gas Co. v. Scully* (1959), 17 Ill. 2d 348, 161 N.E.2d 304; *Lee v. Conroy*). In the instant case, defendant's motion does not so specify, as the pertinent part thereof states only that plaintiff's petition "is insufficient and fails to set forth facts." Moreover, the grant or refusal of a motion to strike a pleading is generally within the sound discretion of the court. (*Ingersoll v. Klein* (1969), 106 Ill. App. 2d 330, 245 N.E.2d 288, *aff'd* (1970), 46 Ill. 2d 42, 262 N.E.2d 593.) In the instant case, we do not believe there was any abuse of such discretion, as it appears to us that the petition adequately apprised defendant of the nature of the relief sought and did not fall short of any requirements set forth in the Paternity Act. That Act provides only that the court may "make new or supplemental orders for the support, maintenance, education and welfare of the child as from time to time the court deems necessary, upon petition." *Goldberg v. Goldberg* (1976), 36 Ill. App. 3d 778, 344 N.E.2d 721, cited by defendant, does not support his position. That case dealt with the quantum of proof necessary to sustain an increase of support payments to children of divorced parents, and thus is of no relevance to the question of whether a petition for a support increase in a paternity proceeding contains allegations sufficient to withstand a motion to strike and dismiss.

Defendant's next contention is that the trial court erred in refusing a continuance and ordering him to trial on the same day the answers to his interrogatories were received. In support of this contention, he relies solely upon section 37(1) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 37(1)), which provides in relevant part:

> "(1) If the allegations are so wanting in details, that the opposite party should be entitled to a bill of particulars, the pleader shall file and serve a copy of the bill on being served with a notice

demanding it. The notice shall point out specifically the defects complained of or the details desired, and a copy thereof shall be filed. If the bill be demanded before the expiration of the time for filing a pleading, the party making the demand shall have the same time to plead after receiving the bill of particulars to which he was entitled at the time of serving the notice." Ill. Rev. Stat. 1977, ch. 110, par. 37(1).

■■ The entire argument of defendant in his brief to support this contention appears as follows:

"The defendant had served his demand for particulars with all due diligence after the motion to strike and dismiss had been denied. The questions were not onerous, irrelevant, frivolous nor dilatory. There was no objection by the State to the questions, and therefore the trial should have been postponed until the defendant might have had the requisite 'assistance of counsel' for preparation subsequent to receiving the necessary information."

It thus appears that defendant is relying solely on the provisions of section 37(1) in support of his contention that he should have been granted a continuance when the petition was called for hearing. However, it is quite clear that defendant did not file a demand for a bill of particulars under section 37; but rather, made a request for discovery under the Supreme Court Rules in the form of a "demand for information pursuant to Rule 201"—thus section 37 is inapplicable.

■■ Furthermore, the record otherwise discloses no abuse of discretion in the denial of defendant's request for a continuance. When the matter was called on April 27, plaintiff filed answers to the three interrogatories submitted by defendant in which she stated that Tiffany's nursery school costs were $35 biweekly; gave a detailed statement of her clothing purchased in 1975 at a cost of $205.99; gave a detailed list of her clothing costs as of August 20, 1976, in the amount of $188; stated that food costs have gone up with each successive year; and that because Tiffany had been accepted into an advanced academic program, she would have added expenses for transportation and lunch money.

In asking for a continuance on April 27, defendant informed the trial court that he needed additional time to prepare an answer to the petition, stating that he had not been able to do so because he had not received plaintiff's answers to the interrogatories until that day. We note, however, that he did not then, nor has he before this court, indicated the information sought in his three interrogatories that he needed to prepare an answer to the petition. Neither has defendant asserted, nor does the record disclose, that he was prejudiced in any manner because he was refused the continuance.

■■ Defendant's final contention is that the trial court erred "in taking

judicial notice" that $65 per month was not adequate to support a child under current economic conditions. While the Paternity Act does not specify a standard of proof that must be satisfied in order to warrant an increase in support payments, the Marriage Act provides that modifications of support for children of divorced parents are justified "only upon a showing of a substantial change in circumstances." (Ill. Rev. Stat. 1977, ch. 40, par. 510a.) We believe that this standard should pertain where modifications of support payments are requested under the Paternity Act and, when confronted with such a petition, that the trial court should consider the totality of the circumstances to determine whether any change is warranted.

■ While we note that the trial court here made a comment during the first day of trial that it would judicially note the inadequacy of $65 per month to support a child, we are unable to determine, as defendant suggests, that this was the basis of its finding that an increase was warranted. There is no transcript of proceedings in the record for the second day of trial, so that we do not have the benefit of any statement the court may have made at the time of its finding. It is the responsibility of appellant to provide a complete record and, where it is incomplete, we will presume that the missing portion is supportive of the court's finding. (*In re Estate of Ito* (1977), 50 Ill. App. 3d 817, 365 N.E.2d 1309.) When this presumption is considered with the uncontradicted evidence appearing in the transcript of the first day of trial, that plaintiff earned $210 every two weeks at the time that the original support order was entered in 1975; that she is currently unemployed; that defendant's take-home pay was about $200 every two weeks in 1975 and now approximates $420; that additional expenses are necessitated for the transportation and education of the child; and that the costs of maintaining the child have increased, we believe that the record demonstrates the substantial change in circumstances necessary to justify the increase in support payments from $30 to $50 every two weeks.

For the reasons stated above, the order of the trial court is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.